RICHARD P. SYBERT (SBN: 080731)
rsybert@gordonrees.com
JONI B. FLAHERTY (SBN: 272690)
jflaherty@gordonrees.com
GORDON & REES LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101
Telephone: (619) 696-6700
Facsimile: (619) 696-7124

Attorneys for Plaintiff
TERRY HODGES

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION - LOS ANGELES

| | |
|---|---|
| TERRY HODGES, an Individual,<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br>CHRISTOPHER TUCKER, an Individual,<br><br>　　　　　　　Defendant. | CASE NO. 2:15-CV-05158-JAK-JEM<br><br>The Honorable John A. Kronstadt<br><br>Magistrate: John E. McDermott<br><br>**AMENDED COMPLAINT FOR DAMAGES**<br><br>Complaint Filed: July 2, 2015<br><br>Removal Filed: July 8, 2015 |

Plaintiff Terry Hodges alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Terry Hodges ("Plaintiff") is and was, at all relevant times mentioned herein, a resident of Atlanta, Georgia.

2. Defendant Christopher ("Chris") Tucker ("Tucker" or "Defendant") is and was, at all relevant times mentioned herein, a resident of Atlanta, Georgia. There is, therefore, incomplete diversity of citizenship in this matter.

///
///

## JURISDICTION AND VENUE

3. Because there is incomplete diversity of citizenship, this Court lacks subject matter jurisdiction of this matter. Plaintiff files this Amended Complaint herein solely because remand has not yet been effected, and does not waive its right to remand. Plaintiff expressly reserves all rights to challenge jurisdiction and remand the case back to California state court, where it was originally filed.

4. On July 8, 2015, Defendant Tucker removed this case from Los Angeles Superior Court, Case No. 586999, to this Court, on the purported basis of complete diversity of the parties.

5. Plaintiff disputes Tucker's claims for complete diversity, and maintains that this Court lacks jurisdiction because (1) the parties are both residents of Georgia and (2) the face of the Complaint fails to allege the requisite amount in controversy.

6. Following the filing of this Amended Complaint, Plaintiff intends to initiate proceedings to remand this case to state court, unless the Court does so first *sua sponte*.

## GENERAL ALLEGATIONS

7. Plaintiff realleges and incorporates the allegations of all preceding paragraphs as if realleged herein.

8. Beginning on or about 2008, Defendant Tucker, a well-known comedian and actor, engaged Plaintiff (a fellow comedian) to work on a feature-length stand-up comedy special, entitled *Chris Tucker Live* (the "Film"). Plaintiff worked on the Film at Tucker's request in a number of key capacities, including writing, editing, co-producing, acting, and voice-over announcing.

9. Tucker paid Plaintiff for early work on the Film, but has not consistently paid Plaintiff since 2011.

/ / /
/ / /

-2-

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

10. Tucker repeatedly promised to pay Plaintiff for his work, without intending to do so. Plaintiff relied upon Tucker's promises as he continued to work on the Film without payment.

11. In relying upon Tucker's repeated promises of payment, Plaintiff turned down other opportunities and compensation associated with other work or consultancy engagements.

12. In further relying upon Tucker's repeated promises of payment, Plaintiff was prevented from pursuing other potentially-lucrative employment and consulting opportunities as actively as he would have if he were not working on the Film.

13. On multiple occasions, Tucker engaged Plaintiff to work on the Film from various locations, often involving travel. Plaintiff has not been compensated by Tucker for these work engagements:

    a. In or around October or November of 2011, Tucker instructed Plaintiff to stay in Philadelphia for three weeks to work on the Film while Tucker was on set. During this time, Plaintiff was prevented from accepting other work, resulting in lost compensation of $1,500 per day and total damages of $31,500. Continuing through at least 2014, Tucker continued to promise payment for this work.

    b. In or around March of 2013, Plaintiff traveled, at Tucker's request, to Los Angeles, California for two days to edit the Film. The standard daily rate for editing work is $2,500 per day, resulting in $5,000 lost compensation.

    c. In or around September of 2013, Plaintiff again traveled, at Tucker's request, to Los Angeles, California for seven days to edit the Film. The standard daily rate for editing work is $2,500 per day, resulting in $17,500 lost compensation.

/ / /

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

    d. In or around 2014, Plaintiff traveled to Tyler Perry Studios in Atlanta, Georgia for three days to edit the Film. The standard daily rate for editing work is $2,500 per day, resulting in $7,500 lost compensation.

    e. In or around May of 2015, Plaintiff edited the Film for two days in Atlanta, Georgia. The standard daily rate for editing work is $2,500 per day, resulting in $5,000 lost compensation.

14. During or around the time Tucker, Plaintiff, director Phil Joanou, and editor Paul Norling ("Norling") were in California to edit the Film, Tucker instructed Norling to add Plaintiff's name as a co-producer of the Film, along with Tucker's siblings, Tammye Stocks and Norris Tucker.

15. In or about September 2014, with Plaintiff still unpaid under the parties' prior oral agreement, Plaintiff and Tucker entered into a new oral contract, whereby, in addition to the amounts due through September 2014, Plaintiff would be credited as a co-producer of the Film and earn a percentage share of the profits.

16. At the time the September 2014 agreement was made, Tucker represented to Plaintiff that he was entering into this agreement because he had not yet paid Plaintiff for his services.

17. Plaintiff has not received any compensation under the September 2014 agreement, was not credited as a co-producer of the Film, and does not believe Tucker intends to keep his promise for a share of the profits.

18. In or about May 9, 2015, at a show in St. Louis, Missouri, Tucker presented Plaintiff with an unsigned "Consultant Agreement" (hereinafter "Sham Agreement"), backdated to August 2012, in an effort to alter and renege on his prior contractual agreements with and promises to Plaintiff. A true and correct copy of the Sham Agreement is attached hereto as Exhibit 1 and incorporated herein by reference.

19. Plaintiff refused to sign the Sham Agreement, and still had not been compensated for his work on the Film pursuant to the parties' agreed-upon terms.

20. Upon information and belief, the Sham Agreement was drafted by Tucker's attorney, Susan C. Adamson, who practices law and resides in or around Santa Monica, California in Los Angeles County.

21. One of the terms of the unsigned Sham Agreement is that the parties' contract is to be governed under the laws of the State of California.

22. Tucker's brother Norris Tucker, acting on behalf of Tucker as his agent, attempted to induce Plaintiff into signing the Sham Agreement by threatening to withhold other, unrelated payments owed to Plaintiff unless he signed. Still, Plaintiff refused to sign the backdated Sham Agreement.

23. At no time did Plaintiff ever agree that the Sham Agreement would govern the parties' agreement or supersede prior negotiated terms.

24. At no time did Plaintiff ever agree that payments owed to him by Tucker for other functions, such as the parties' separate engagement related to Tucker's comedy show tour, satisfied compensation for Plaintiff's work on the Film.

## FIRST CAUSE OF ACTION

### For Breach of Oral Contract Count 1

25. Plaintiff realleges and incorporates the allegations of all preceding paragraphs as if realleged herein.

26. On or about 2008, Plaintiff and Tucker entered into an agreement whereby Plaintiff was to work on the Film.

27. Tucker breached the agreement by not consistently paying Tucker for his work on the Film since 2011.

28. Tucker has repeatedly offered Plaintiff inconsistent explanations for why payment was not made to Plaintiff. Still, Plaintiff has yet to be paid all sums owed to him by Tucker, and Tucker's failure to pay constitutes a material breach of the parties' agreement.

///

29. Beginning in or around 2011 and continuing through 2014, Tucker continued to promise to pay Plaintiff for his work on the Film.

30. In reliance upon these ongoing inducements, Plaintiff continued to work on the Film and relied upon Tucker's assurances that past and current work would be compensated, including the multiple engagements in Los Angeles, Philadelphia, and Atlanta, as alleged herein.

31. Plaintiff fully performed all the acts, services and conditions required under the oral agreement for his work on the Film; therefore, Tucker's failure to pay is unjustified.

32. To date, there is now due and owing from Tucker to Plaintiff the sum of at least $66,500 plus interest accrued, along with a share of future profits, and Plaintiff has suffered damages in that amount.

33. Tucker's breach of the oral agreement was the direct and proximate cause of Plaintiff's damages.

## SECOND CAUSE OF ACTION

### For Breach of Oral Contract Count 2

34. Plaintiff realleges and incorporates the allegations of all preceding paragraphs as if realleged herein.

35. On or about September 2014, as Plaintiff had still not been compensated for his work on the Film, Plaintiff and Tucker entered into the second oral contract, under which Plaintiff would be credited as a co-producer of the Film and earn a share of the profits or revenue.

36. To date, Plaintiff has still not been compensated for his work on the film, was not credited as a co-producer as promised, and has not received a share of the Film's profits or revenue.

37. Tucker materially breached the September 2014 agreement with Plaintiff by failing to pay Plaintiff a share of the profits or revenue of the Film.

///

38. Tucker further materially breached the September 2014 agreement with Plaintiff by failing to credit Plaintiff as a co-producer of the Film.

39. As a direct and proximate result of Tucker's actions and conduct in breach of the contracts, Plaintiff has been damaged monetarily and also in the form of lost opportunities to work on other projects.

40. Plaintiff has further been injured as a result of Tucker's breach of contract because Plaintiff will not receive the benefit of the bargain promised to him through the agreements with Tucker, including the lack of credit for his efforts on the Film.

41. Plaintiff has performed all conditions, covenants, and promises required of him under the agreements with Tucker, save and except those that were waived, excused, or otherwise unenforceable and Tucker has caused Plaintiff to suffer damages as a direct and proximate result of the forgoing.

## THIRD CAUSE OF ACTION

### For Fraud and Deceit and False Promise

42. Plaintiff realleges and incorporates the allegations of all preceding paragraphs as if realleged herein.

43. At the times Tucker made the promises to Plaintiff in connection with the Film as described above, as well as the times that Tucker reaffirmed and ratified said promises to Plaintiff, he expressly and impliedly represented to him that there existed in his then-present state of mind an intention to keep the those promises.

44. The promises were false, and each time Tucker represented to Plaintiff that those facts as true, he knew they were false.

45. At the times Tucker made the promises, as well as the time those promise were relied upon by Plaintiff, Plaintiff believed that the promises were true.

///

*Gordon & Rees LLP*
*101 W. Broadway Suite 2000*
*San Diego, CA 92101*

46. At all times herein mentioned, Tucker intended to defraud and deceive Plaintiff by causing him to act to his detriment in reliance upon his belief in the truth of Tucker's promises.

47. In reasonable reliance upon Plaintiff's belief in the truth of Tucker's said promises, he acted as follows:

(a) Plaintiff continued to work on the Film at Tucker's direction and with the understanding and reasonable belief he would be paid;

(b) Plaintiff was prevented from pursuing work on other projects due to the ongoing promises of payment from Tucker, thereby resulting in lost income and income opportunities;

(c) Through his work on the Film, Plaintiff provided Tucker with creative material and his writing, acting, and voiceover talents, efforts of which could have been used toward and advanced Plaintiff's own comedy career; and

(d) Plaintiff promoted the Film to third parties, resulting in good will to Tucker at Plaintiff's expense and detriment.

48. Were it not for Plaintiff's trust and confidence in Tucker as a friend and collaborator, and his reliance upon and belief in the truth of his promises, Plaintiff would not have acted as alleged above.

49. By reason of the fraud and deceit and false promises by Tucker, Plaintiff has suffered damages in an amount to be proven at trial. Said damages are in an amount in excess of the jurisdictional limit of this Court, but Plaintiff has not as yet ascertained the exact amount of his damages.

50. By reason of the fraud and deceit perpetrated by Tucker in deceiving Plaintiff into acting to his detriment in reliance on promises which Tucker never intended to keep, Tucker acted with malice.

51. By reason of the said malice and in performing the acts alleged, Tucker acted with the intent to injure Plaintiff and the acts were willful, wanton, malicious, and oppressive so as to constitute malice, fraud, and/or oppression as set

-8-

forth in California Civil Code § 3294. Accordingly, Plaintiff is entitled to recover, in addition to actual damages, punitive, and exemplary damages in an amount to punish and to make an example of Tucker.

52. Alternatively, the acts of Tucker were made in conscious or reckless disregard of the probability of damage to Plaintiff and thus the conduct alleged herein supports an award of punitive damages pursuant to California Civil Code § 3294 in an amount to punish and to deter such conduct in the future.

53. As a direct and proximate cause of Tucker's conduct in concealing and suppressing his intention of never abiding by the terms of his agreements with Plaintiff, Plaintiff was precluded from protecting his rights sooner, and has been damaged as a result thereof, including, but not limited to unpaid compensation, profits, producer credits, and lost opportunities, together with interest.

54. Tucker continued to conceal and suppress the rights owed by him to Plaintiff under the agreements by, among other things, (i) wrongfully and falsely contending that the back-dated Sham Agreement governed the parties' arrangement; (ii) maintaining his intention to compensate Plaintiff under the parties' valid and enforceable agreements; and (iii) falsely representing that the Sham Agreement represented the terms of the parties' agreement when it was not.

## FOURTH CAUSE OF ACTION

### For Unjust Enrichment

55. Plaintiff realleges and incorporates the allegations of all preceding paragraphs as if realleged herein.

56. This claim arises under the common law of the State of California. Tucker has used Plaintiff's work on the Film and the derivative benefits resulting from that work without full compensation, profit sharing, or producer credit. Tucker has derived considerable economic benefit from his conduct. By using Plaintiff's work, labor, and efforts for his own personal use and benefit, Tucker has been unjustly enriched at Plaintiff's expense.

57. Tucker was unjustly enriched because his misappropriation of Plaintiff's work on the Film without compensation caused Tucker to receive a benefit that he otherwise would not have received.

58. Tucker must disgorge all profits earned from the uncompensated and uncredited work on the Film by Plaintiff.

## FIFTH CAUSE OF ACTION

### For Breach of the Covenant of Good Faith and Fair Dealing

59. Plaintiff realleges and incorporates the allegations of all preceding paragraphs as if realleged herein.

60. Every contract carries with it a covenant of good faith and fair dealing by the parties so as not to deprive the parties of the benefits of the agreement. This implied covenant imposed upon Tucker the duty to refrain from doing anything to impede full performance of the agreements or their intended purpose.

61. Tucker breached the implied covenant of good faith and fair dealing by failing to meet his obligations and promises to deal fairly and honestly with Plaintiff throughout the duration of their business relationship, by breaching the agreements and refusing to compensate Plaintiff or credit him as co-producer.

62. As a direct and proximate result of Tucker's acts alleged herein, Plaintiff has suffered, and continues to suffer, damages in the amount to be determined according to proof at the time of trial together with interest thereon at a maximum rate allowed by law, and reasonable attorney's fees and costs.

## SIXTH CAUSE OF ACTION

### For Quantum Meruit

63. Plaintiff realleges and incorporates the allegations of all preceding paragraphs as if realleged herein.

64. Within the past four years, Plaintiff conferred a benefit on Tucker by providing services and labor to Tucker in relation to the Film at the special request

of Tucker, for which Tucker promised to pay Plaintiff the reasonable value of such services.

65. Tucker received and appreciated the benefits of the services and labor provided by Plaintiff.

66. Tucker accepted and retained the benefits of Plaintiff's services and labor without compensating Plaintiff for same. Plaintiff had made repeated demands and requests for payment to Tucker, but Tucker has failed and continues to refuse to pay Plaintiff for his work on the Film.

67. It would be unjust, unfair, and inequitable for Tucker to retain the benefit of the services and labor furnished by Plaintiff absent payment to Plaintiff for the value of his work.

68. Tucker has been unjustly enriched in an amount in excess of $10,000, to be proven at trial.

69. As a result, Plaintiff has been compelled to initiate this suit and to incur attorney's fees and costs, which he is entitled to recover from Tucker.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant Tucker, as follows:

1. For actual damages;
2. For consequential and special damages;
3. For disgorgement of profits;
4. For reasonable attorney fees in an amount according to proof at time of trial;
5. For interest as provided by law and contract;
6. For costs of suit incurred herein;
7. As to the Third Cause of Action, for punitive damages in an amount to be proven at trial; and
8. For such other and further relief as the Court deems proper.

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

Dated: July 9, 2015          GORDON & REES LLP

By: */s/ Joni B. Flaherty*
     Richard P. Sybert
     Joni B. Flaherty
     Attorneys for Plaintiff
     TERRY HODGES

## CERTIFICATE OF SERVICE

I hereby certify that on July 9, 2015, a copy of the foregoing document was filed electronically with the Clerk of the Court using the Court's CM/ECF electronic filing system, which will send an electronic copy of this filing to all counsel of record.

_____
Maria G. Cerezo